IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 9, 2016 Session

## CREDENTIAL LEASING CORPORATION OF TENNESSEE, INC. v. PATRICK L. WHITE

**Appeal from the Chancery Court for Monroe County**
**No. 18340     Jerri S. Bryant, Chancellor**

———————————————

**No. E2015-01129-COA-R3-CV-FILED-MAY 17, 2016**

———————————————

The defendant, a practicing attorney, prepared a deed of trust for the benefit of the plaintiff lender concerning a loan made by the lender to the defendant's brother. The subject property was subsequently foreclosed upon by the first mortgage holder without notice to the lender. The lender later discovered that its deed of trust contained certain defects. The lender filed the instant action against the defendant, claiming that the defendant was liable for professional negligence, breach of contract, fraudulent misrepresentation, and a violation of the Tennessee Consumer Protection Act. The trial court granted summary judgment in favor of the lender on the professional negligence claim while granting summary judgment in favor of the defendant on the breach of contract claim. The case proceeded to trial upon the remaining issues of fraudulent misrepresentation, consumer protection claims, timeliness, and damages. Following a bench trial, the court granted judgment to the lender in the amount of $52,600.00 based on the court's determination that the defendant was liable for professional negligence, fraudulent misrepresentation, and breach of contract, despite the earlier grant of summary judgment on the latter issue. The court further determined that the defendant had violated the Tennessee Consumer Protection Act and awarded treble damages and attorney's fees. The defendant has appealed. Having determined that the trial court erred in finding a violation of the Tennessee Consumer Protection Act, we reverse the trial court's award of treble damages and attorney's fees. We also reverse the trial court's determination of breach of contract, due to the lack of notice to the defendant that this issue would be tried. We affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Gregory C. Logue and Robert L. Vance, Knoxville, Tennessee, for the appellant, Patrick L. White.

Kenneth S. Christiansen and Daniel J. Chung, Knoxville, Tennessee, for the appellee, Credential Leasing Corporation of Tennessee, Inc.

**OPINION**

I.  Factual and Procedural Background

This action involves an allegedly defective deed of trust prepared by the defendant, Patrick L. White, a licensed attorney who operated a title insurance company from 1993 to 2010.  In July 2010, Patrick White prepared a deed of trust in favor of Credential Leasing Corporation of Tennessee, Inc. ("Credential"), conveying title to a parcel of land located in Monroe County, Tennessee ("the River Lodge Property"), which was owned in part by Patrick White's brother, Mark White.  Previously, in June or July 2007, Patrick White had prepared a warranty deed transferring title of the River Lodge Property from Green Cove, LLC, to Jerold Howard and Mark White as tenants in common.  Jerold Howard and Mark White concomitantly executed a deed of trust concerning the River Lodge Property, securing a loan from Clayton Bank and Trust ("Clayton Bank").  Although Patrick White did not prepare the 2007 deed of trust, he did notarize the signatures of the grantors thereon.

In July 2010, Mark White asked Patrick White to prepare a deed of trust to enable Mark White to secure and renegotiate an existing loan he had obtained from Credential, a company which primarily handles commercial equipment leasing and financing.  Patrick White sent an electronic mail message to Mark White on July 20, 2010, agreeing to complete the "title work," prepare the necessary documents, and issue title insurance for the River Lodge Property.  He further detailed the charges involved for these tasks.  Patrick White prepared the deed of trust, conveying Mark White's interest in the River Lodge Property and two additional unimproved parcels of real property to Ridge Title Insurance Company, as trustee for Credential, in exchange for a loan to Mark White in the amount of $52,600.00 from Credential ("2010 Deed of Trust").  This trust deed was executed on July 22, 2010.

The 2010 Deed of Trust does not mention Mr. Howard's one-half interest in the River Lodge Property.  Instead, it lists Mark White and his wife, Lorie White, as the grantors, stating that "[t]he Grantor covenants that she is lawfully seized of the said

2

property, has a good right to convey it, and that the same is unencumbered." The legal description of the River Lodge Property attached to the 2010 Deed of Trust describes the property by metes and bounds. The warranty deed and deed of trust executed in 2007, however, contain a different description of the property, referenced specifically as a "lot and block" description. Credential subsequently tendered payment to Patrick White in the full amount charged for his services via check.

The following year, Mark and Lorie White declared bankruptcy in September 2011. A notice of the bankruptcy filing was sent by the federal bankruptcy court to Credential on February 11, 2012. In June 2013, Credential learned that the River Lodge Property had been sold at a non-judicial foreclosure sale in February 2013. Credential did not receive notice of this sale from Clayton Bank. Shortly thereafter, Credential realized that Mark White held only a one-half interest in the River Lodge Property and that the 2010 Deed of Trust did not convey the remaining interest in the property because it was not executed by Mr. Howard.

On December 11, 2013, Credential filed a complaint against Patrick White in the Monroe County Chancery County ("trial court"), alleging negligence, professional negligence, breach of contract, fraudulent misrepresentation, and violation of the Tennessee Consumer Protection Act ("TCPA"). Patrick White filed an answer denying liability, quickly followed by a motion for summary judgment. Patrick White contended that (1) he had no attorney-client relationship with Credential that would support Credential's claim for professional negligence, (2) no contract existed between him and Credential to support the breach of contract claim, and (3) Credential's claims were time-barred by the applicable statute of limitations. Credential subsequently filed a motion for summary judgment as well.

The trial court conducted a hearing regarding the countervailing motions for summary judgment on March 6, 2014. In an order entered April 14, 2014, the court granted partial summary judgment in favor of Patrick White on Credential's breach of contract claim but denied summary judgment regarding the fraudulent misrepresentation claim. On May 16, 2014, the court entered a second order regarding the motions for summary judgment. By this order, the court granted summary judgment in favor of Credential on the claims of professional negligence and misrepresentation. The court denied summary judgment to Credential regarding its claim of fraud, finding that genuine issues of material fact existed with regard to this claim. The court denied summary judgment to Mr. White regarding his statute of limitations defense.

Following a bench trial conducted on December 3, 2014, the trial court granted judgment in favor of Credential upon the court's finding that Patrick White had committed fraudulent misrepresentation. Taking the issue regarding applicability of the

TCPA under advisement, the court afforded the parties ten days to submit supplemental memorandums of law addressing the TCPA issue. Credential filed a memorandum supporting the applicability of the TCPA on December 12, 2014.

On March 10, 2015, the trial court entered an order granting judgment in favor of Credential on its TCPA claim. The court also reversed its prior ruling on the breach of contract claim and granted judgment in favor of Credential on this claim as well, determining that a valid contract existed between the parties. The court found that Credential was entitled to damages in the amount of $52,600.00, plus pre-judgment interest and attorney's fees. Pursuant to the TCPA, the court trebled the damages for a total judgment of $157,800.00, plus attorney's fees. *See* Tenn. Code Ann. § 47-18-109.

By order dated May 11, 2015, the trial court awarded attorney's fees to Credential in the amount of $16,490.83. Patrick White timely appealed.

## I. Issues Presented

Patrick White presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by awarding damages to Credential pursuant to the TCPA.

2. Whether the trial court erred by determining that Credential's claims were filed within the one-year statutes of limitations contained in Tennessee Code Annotated §§ 28-3-104(a)(2) and 47-18-110.

3. Whether the trial court erred by ruling in favor of Credential on its breach of contract claim.

## II. Standard of Review

We review the trial court's findings of fact following a bench trial *de novo* with a presumption of correctness unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d). We review conclusions of law, however, *de novo* without any presumption of correctness. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996) (citing *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993)).

### III. Statutes of Limitations

As a threshold matter, Patrick White asserts that the trial court's judgment should be reversed because Credential's claims are barred by the applicable one-year statutes of limitations. *See* Tenn. Code Ann. § 28-3-104(a)(2) (2013) (one-year statute of limitations applicable to actions against attorneys "whether the actions are grounded or based in contract or tort"); Tenn. Code Ann. § 47-18-110 (2013) (one-year statute of limitations applicable to TCPA actions).

Tennessee Code Annotated § 47-18-110 provides the following:

> Any action commenced pursuant to § 47-18-109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event shall an action under § 47-18-109 be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief.

As this Court has explained, based on the above statutory language, "the Tennessee legislature has determined that a plaintiff's TCPA claim accrues at time of the 'discovery of the unlawful act or practice . . . .'" *Fortune v. Unum Life Ins. Co. of Am.*, 360 S.W.3d 390, 402 (Tenn. Ct. App. 2011) (internal citations omitted). Discovery occurs when the party "knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained." *Fortune*, 360 S.W.3d at 402 (quoting *Pero's Steak and Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002)). The question of "[w]hether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a fact question for the jury to determine." *Schmank v. Sonic Auto., Inc.*, No. E2007-01857-COA-R3-CV, 2008 WL 2078076 at *3 (Tenn. Ct. App. May 16, 2008) (quoting *Wyatt v. A-Best Co.*, 910 S.W.2d 851, 854 (Tenn. 1995)).

The version of Tennessee Code Annotated § 28-3-104(a)(2) applicable to this action provided that "[a]ctions and suits against attorneys or licensed public accountants or certified public accountants for malpractice, whether the actions are grounded or based in contract or tort . . . ," shall be commenced within one year after the cause of action accrued. This statute of limitations is similarly subject to the discovery rule discussed above. *See John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). As our Supreme Court explained:

> In legal malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of

5

reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct. *Carvell v. Bottoms,* 900 S.W.2d 23, 28-30 (Tenn. 1995). An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. *See LaMure v. Peters,* 122 N.M. 367, 924 P.2d 1379, 1382 (1996). An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer "some actual inconvenience," such as incurring an expense, as a result of the defendant's negligent or wrongful act. *See State v. McClellan,* 113 Tenn. 616, 85 S.W. 267, 270 (1905) ("[A negligent act] may not inflict any immediate wrong on an individual, but . . . his right to a remedy . . . will [not] commence until he has suffered some actual inconvenience . . . . [I]t may be stated as an invariable rule that when the injury, however slight, is complete at the time of the act, the statutory period then commences, but, when the act is not legally injurious until certain consequences occur, the time commences to run from the consequential damage . . . .").

*Id.*

Patrick White asserts that Credential's receipt of notice of Mark White's bankruptcy petition in 2011 should be considered constructive notice of Credential's injury because it was sufficient to put Credential on inquiry notice regarding its status pursuant to the 2010 Deed of Trust. As Patrick White points out, Credential admitted receiving notice of the bankruptcy petition and Credential's attorney's appearance in the bankruptcy action on Credential's behalf. According to Patrick White, the bankruptcy filings contained a list of creditors indicating that Credential held a second mortgage on the River Lodge Property. Therefore, as his argument goes, if Credential had examined the bankruptcy pleadings, Credential would have discovered that it did not have a first mortgage lien on the River Lodge Property. Patrick White posits that if Credential knew or should have known that it did not possess a first mortgage, Credential would only be entitled to damages if it could prove that the fair market value of the property at the time of foreclosure exceeded the balance of the first mortgage indebtedness.

We disagree with Patrick White's assertion that the bankruptcy petition constituted sufficient notice to Credential in 2011 to create a statute of limitations question in this matter. Credential's president, Charles Lutz, testified at trial that Credential knew from the beginning that it would receive a second mortgage lien but believed that it would receive such mortgage interest in the entire ownership interest in the River Lodge Property, rather than simply a one-half interest. Therefore, any information contained within the bankruptcy petition demonstrating that Credential held only a second mortgage position did not put Credential on notice of a defect in the 2010 Deed of Trust because it

did not provide information of which Credential was unaware. Significantly, the trial court's determination that Patrick White made fraudulent misrepresentations to Credential was also based on other facts established at trial, including (1) the lack of disclosure in the 2010 Deed of Trust that Mr. Howard owned a one-half interest in the property; (2) the addition of Lorie White as grantor when she was not a record owner of the property; (3) the difference in property description, which Mr. Waters opined would be a great hindrance to anyone searching the title to look for earlier deeds; and (4) Mr. White's representation that he would do the "title work" and provide title insurance when he in fact failed to do either.

Credential asserts that it did not receive notice, actual or constructive, via its knowledge of the bankruptcy petition regarding the conveyance of only a one-half interest by the 2010 Deed of Trust.[1] Credential contends that it relied upon Mr. White's actions for a "properly filed mortgage trust deed" as well as his assurance that he would perform the "title work" and issue title insurance. Mr. Lutz admitted in his testimony that although Credential received a bankruptcy notice concerning Mark White, Mr. Lutz believed Credential held a properly recorded second mortgage relative to all interest in the property and would receive notice from the first mortgage holder in the event of a foreclosure.

Mr. Waters opined that Credential should have been notified of the foreclosure sale by Clayton Bank, if not for Patrick White's errors in the drafting of the 2010 Deed of Trust preventing Clayton Bank's attorney from discovering the second mortgage lien. Mr. Waters stated that Patrick White improperly listed the grantors on the 2010 Deed of Trust as Mark and Lorie White when the record property owners were Jerold Howard and Mark White as tenants in common. Furthermore, Patrick White incorporated a deed description different from the description used in the earlier deeds. Mr. Waters testified that the combination of these errors prevented the 2010 Deed of Trust from appearing to be applicable to the River Lodge Property on the indexes in the respective register of deeds office. Mr. Waters opined that this was the reason Credential was not notified of the foreclosure sale by Clayton Bank. Mr. Lutz testified that if Credential had been notified of the foreclosure sale, it would have bid higher than the $63,000.00 sale price in order to protect its security interest.

Furthermore, Patrick White admitted that he transmitted an email to Mark White agreeing to perform "title work," which he explained would include a title search, and to issue title insurance. Patrick White further admitted that he never performed a title search before drafting the 2010 Deed of Trust and did not issue title insurance, even though he received payment for both. Patrick White testified that he prepared the 2010

---

[1] Contrary to Patrick White's assertion, Credential did plead in its complaint that there were other errors in the deed aside from the statement that the property was unencumbered.

Deed of Trust from information provided by Mark White and that he later refunded the payment for the work he did not perform directly to Mark White.

The trial court made extensive factual findings and credibility determinations in this matter. Specifically, the court found that Patrick White "never intended to perform the title search." The court also determined that his conduct regarding the drafting of the 2010 Deed of Trust was intentional or, at best, reckless. The court credited the testimony of Mr. Waters and determined that Patrick White's actions were an intentional attempt to mislead Credential. The court noted that Patrick White did not disclose to Credential that the 2010 Deed of Trust only conveyed a one-half interest in encumbered property. In addition, the court found that by adding Lorie White to the 2010 Deed of Trust as a grantor, Patrick White helped to create an appearance that it was a different parcel of property. As the court concluded, this addition, coupled with the change in the property description, would hinder a title examiner from relating the two deeds of trust. The court noted that Mr. Waters testified these actions by a title attorney fell below the applicable standard of care and caused the subject deed of trust to be inappropriately indexed.

The trial court further stated:

> The court has observed the Defendant during this trial. He appeared bored, unconcerned, cleaned his nails during the testimony of others, and, as he testified, did not appear credible. Because of the intentional nature of hiding the deed description, the court finds the statute of limitations has not run. There was a contract between Credential Leasing and the Defendant to prepare a deed of trust and promissory note, and for title insurance. This included a title search. Credential Leasing relied on the actions of the Defendant to protect them.

As our Supreme Court has elucidated with regard to determinations of witness credibility:

> Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. *See State v. Pruett,* 788 S.W.2d 559, 561 (Tenn. 1990); *Bowman v. Bowman,* 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See Tenn–Tex Properties v. Brownell–Electro, Inc.,* 778 S.W.2d 423, 425-26 (Tenn. 1989); *Mitchell v. Archibald,* 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.

*Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Based upon the trial court's credibility assessments and our thorough review of the record, we conclude that the evidence preponderates in favor of the trial court's determination that Patrick White made fraudulent misrepresentations through the manner in which he drafted the 2010 Deed of Trust. Furthermore, nothing in the bankruptcy filings would have caused Credential to discover the nature of its injury suffered by reason of the defective and improper drafting of the 2010 Deed of Trust. Therefore, as the trial court found, Credential's action was timely filed within the applicable statutes of limitations in this matter.

We also find unavailing Patrick White's argument relative to an award of damages. Patrick White asserts that Credential cannot recover damages if it knew or should have known that it was holding only a second mortgage interest because the property sold at the foreclosure sale for $63,000.00, an amount less than the balance of Clayton's Bank's first mortgage indebtedness of $105,500.00. Patrick White contends that the foreclosure sale price is the best proof of value and that Credential did not present proof of any greater value.[2]

We determine that Patrick White has conflated the issues of damages and the complaint's timeliness. Furthermore, he argues that Credential's damages are limited to the difference between the fair market value of the property and the balance of the first mortgage indebtedness, primarily relying on a case involving negligent impairment of a security interest. *See Chem. Residential Mort. Corp. v. Hodge*, No. W2000-02958-COA-R3-CV, 2002 WL 1349511 at *1 (Tenn. Ct. App. June 20, 2002). However, Credential claimed and the trial court found that Patrick White was guilty of fraudulent misrepresentation. The court did not address a theory of negligent impairment, which was not pled below. This Court has explained the elements of fraudulent misrepresentation and the damages that flow from it as follows:

> To prevail on a claim of fraudulent misrepresentation, a plaintiff must demonstrate that:
>
> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in

---

[2] We note, however, that Mr. Lutz testified that Mark White valued the property at $200,000.00 on a financial statement he provided to Credential. Furthermore, Mr. Lutz testified that if Credential had received notice of the foreclosure sale, it would have bid more than $63,000.00 to protect its security interest.

its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Metropolitan Gov't of Nashville and Davidson County v. McKinney,* 852 S.W.2d 233, 237 (Tenn. App. 1992) (citing *Graham v. First American Nat'l Bank,* 594 S.W.2d 723, 725 (Tenn. App. 1979)); *Devorak v. Patterson,* 907 S.W.2d 815, 819 (Tenn. App. 1995). In cases involving fraud in the sale of real property, this court has held that

[o]ne who in a real estate transaction in which he has a pecuniary interest supplies false information for the guidance of others is subject to liability for the pecuniary loss caused to them by their justifiable reliance on such information.

*Youngblood v. Wall,* 815 S.W.2d 512, 518 (Tenn. App. 1991) (citing *Chastain v. Billings,* 570 S.W.2d 866 (Tenn. App. 1978)).

Generally speaking, the measure of damages in a fraud case is to compensate the injured party for actual damages by attempting to place that party in the same position that he or she would have been in had the fraud not occurred. *Harrogate Corp. v. Systems Sales Corp.,* 915 S.W.2d 812, 817 (Tenn. App. 1995); *Youngblood,* 815 S.W.2d at 518.

*Bagby v. Carrico*, No. 03A01-9705-CV-00183, 1997 WL 772877 at *2-3 (Tenn. Ct. App. Dec. 9, 1997). We conclude that the evidence presented at trial supports the trial court's determination that Patrick White committed fraudulent misrepresentations in the drafting of the 2010 Deed of Trust. We further determine that the trial court's measure of damages, $52,600.00, is proper in that it represents the amount of money Credential lost by extending the loan to Mark White based on the 2010 Deed of Trust. Mr. Lutz stated that Credential would not have extended this loan to Mark White if it had not believed it was receiving a second mortgage lien in the full ownership interest for the River Lodge Property. The amount of $52,600.00 will place Credential in the same position it would have been in if the fraud had not occurred. *See Bagby*, 1997 WL 772877 at *3. Patrick White's argument in this regard is without merit.

## IV. Tennessee Consumer Protection Act Claim

Relying substantially on federal precedent, Patrick White asserts that the trial court erred by trebling Credential's damages and awarding attorney's fees pursuant to the TCPA because he was an attorney practicing law. *See Pagliara v. Johnston Barton*

*Proctor & Rose, LLP*, 708 F.3d 813, 820 (6th Cir. 2013) ("TCPA cannot be used to impose liability on lawyers practicing law."). Generally speaking, the TCPA, codified at Tennessee Code Annotated §§ 47-18-101, *et seq.*, is designed to provide state law remedies to "consumers victimized by unfair or deceptive business acts or practices that were committed in Tennessee." *See Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). This Court has further explained:

> In order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated . . . ." Tenn. Code Ann. § 47-18-109(a)(1). The defendant's conduct need not be willful or even knowing, but if it is, the TCPA permits the trial court to award treble damages. Tenn. Code Ann. § 47-18-109(a)(3).

*Tucker*, 180 S.W.3d at 115-16 (other internal citations omitted).

With regard to the TCPA, the trial court made the following findings and conclusions:

> The Defendant's actions in this case were unconscionable, and the Defendant used deceptive methods, acts or practices in the conduct of his commercial or business aspect of his practice. The court finds the evidence clear and convincing that Defendant intended to perpetrate a fraud with and/or for his brother, Mark White. The actions of the Defendant in this case rise to the level of a clear violation of the Tennessee Consumer Protection Act . . . . The court will treble damages to $157,800. Credential Leasing is also entitled to attorney's fees.

Based on federal precedent, Patrick White contends that the trial court's determination of a TCPA violation is in error because he was engaged in the practice of law at the time of the allegedly deceptive act. *See Pagliara*, 708 F.3d at 820. Although our Supreme Court has not spoken on the subject, federal courts applying Tennessee law have held that the TCPA does not apply to attorneys practicing law. *See Pagliara*, 708 F.3d at 820; *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 608 (W. D. Tenn. 2011) ("When professionals like lawyers and doctors practice their professions outside their roles as businessmen or entrepreneurs, they do not engage in trade or commerce under the TCPA."); *Schmidt v. Nat'l City Corp.*, No. 3:06-CV-209, 2008 WL 597687 at *3 (E. D. Tenn. Mar. 4, 2008) ("the TCPA does not apply to lawyers practicing law because the practice of law is a profession and is not trade or commerce as

11

defined in the TCPA."). Although we note that federal intermediate appellate decisions are but persuasive authority for Tennessee courts, *see Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 785 n.3 (Tenn. Ct. App. 2010) (internal citations omitted), upon consideration, we agree with the analysis provided in the above-cited federal cases regarding the applicability of the TCPA.

Credential posits, however, that Patrick White was found by the trial court to have committed a deceptive act "in the conduct of his commercial or business aspect of his practice." Relying on federal precedent applying Tennessee law, this Court has previously recognized that although a malpractice claim "may not be recast" as a TCPA claim, learned professionals such as doctors and lawyers are not exempt from the TCPA with regard to "claims relating to their business practices." *See Proctor v. Chattanooga Orthopaedic Grp., P.C.*, 270 S.W.3d 56, 61 (Tenn. Ct. App. 2008). In *Proctor*, the plaintiffs' TCPA claim was based upon the allegation that "[the defendant medical group] had misled them in order to keep Mr. Proctor's business, and that Defendants charged for a more expensive procedure than the one actually performed." *Id.* at 60. By contrast, the *Proctor* plaintiffs' TCPA claims "did not allege that Defendants had deviated from the acceptable standard of professional practice in either the decision to perform the surgery that was performed or in the manner in which the actual surgery was performed." *Id.* Therefore, this Court determined that the plaintiffs in *Proctor* had stated a claim under the TCPA as relating to their business practices and that the trial court erred in dismissing their complaint. *Id.*

In the case at bar, Patrick White was found to have improperly drafted the 2010 Deed of Trust by incorporating a deed description different from that used in prior deeds, supplying an additional name to the grantors, and failing to disclose in the deed that Mark White only owned a one-half interest in the property conveyed. Credential argues strenuously that Patrick White was not engaged in the practice of law when drafting the 2010 Deed of Trust because Patrick White testified that he prepared the trust deed by merely incorporating a property description provided by his brother and without performing a title search. We disagree. Tennessee precedent regarding this issue provides that the practice of law "relates to the rendition of services for others that call for the professional judgment of a lawyer," such that "the drafting of pleadings and legal documents or the selection and completion of form documents constitutes the practice of law." *See Flanary v. Carl Gregory Dodge of Johnson City, LLC*, No. E2007-01433-COA-R3-CV, 2008 WL 2434196 at *4 (Tenn. Ct. App. June 17, 2008) (quoting *Fifteenth Judicial Dist. Unified Bar Ass'n v. Glasgow,* No. M1996-00020-COA-R3-CV, 1999 WL 1128847 at *4 (Tenn. Ct. App. Dec. 10, 1999)). *See also Spiegel v. Thomas, Mann & Smith, P.C.*, No. C/A 895, 1989 WL 128294 at *1 (Tenn. Ct. App. Oct. 30, 1989) (determining the drafting of deeds of trust to be one of many aspects of the practice of law), *rev'd on other grounds by Spiegel,* 811 S.W.2d 528 (Tenn. 1991). The fact that

Patrick White may not have performed the task of drafting the 2010 Deed of Trust properly or carefully does not mean that he was not engaged in the practice of law when he did so. Credential alleged that Patrick White's drafting of the 2010 Deed of Trust fell below the accepted standard of care for title attorneys. The trial court agreed, determining that Patrick White was liable for professional negligence. Ergo, he cannot also be found to have violated the TCPA based upon the same allegations.

Inasmuch as Patrick White was engaged in the practice of law when drafting the 2010 Deed of Trust, his actions cannot constitute a violation of the TCPA. Therefore, the trial court was in error by trebling Credential's damages and awarding Credential attorney's fees pursuant to the TCPA. We reverse the trial court's determination of a TCPA violation and its resultant award of treble damages and attorney's fees.

## V. Breach of Contract

Finally, Patrick White argues that the trial court erred by determining that he breached a contract with Credential following the presentation of proof at trial when the court had previously granted summary judgment in his favor on this issue. According to Patrick White, he was prejudiced at trial by being denied the opportunity to defend against this claim previously dismissed by the trial court. Patrick White contends that he received no notice to defend the breach of contract claim and that he consequently did not proffer any evidence refuting this claim. Having carefully reviewed the record, we agree with Patrick White on this issue.

On May 16, 2014, the trial court granted summary judgment in favor of Patrick White regarding Credential's breach of contract claim, determining that no contract existed between the parties. At the beginning of the subsequent trial held on December 3, 2014, the court asked the parties' attorneys to provide an outline of the remaining issues for trial. Neither attorney mentioned the breach of contract claim, and no motion was presented seeking to revive this claim. The trial proceeded regarding the remaining issues of fraudulent misrepresentation, consumer protection claims, timeliness, and damages. At the conclusion of the trial, the court issued an oral ruling from the bench, wherein the chancellor stated in pertinent part, "I'm not so sure now that my previous ruling that he – that there was not a contractual relationship between the parties is the correct ruling. I've not been asked to go back and revisit that." The court made no further comment regarding breach of contract during its oral ruling.

In its subsequent written order entered on March 10, 2015, however, the trial court found that there was a valid contract between the parties. The court also found that Patrick White had breached the contract, despite the earlier grant of summary judgment on this issue. Therefore, at the time of trial and until the subsequent written order was

13

entered, Patrick White had no notice that he needed to present evidence regarding or defend against the breach of contract claim. We determine that Patrick White suffered prejudice by revival of a claim upon which summary judgment had previously been granted. *See, e.g., Ellison v. Ellison*, No. E2007-01744-COA-R3-CV, 2008 WL 4415768 at *6-7 (Tenn. Ct. App. Sept. 29, 2008) (determining that the defendant was prejudiced when she was not provided notice that a claim would be litigated until after the proof was closed and thus had no opportunity to defend against that claim). We conclude that the portion of the trial court's judgment determining Patrick White to have breached a contract with Credential must be reversed.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's award of $52,600.00 in damages to Credential on the basis of fraudulent misrepresentation, plus prejudgment interest.[3] We reverse the trial court's trebling of that damage amount and its award of attorney's fees pursuant to the TCPA. We also reverse the trial court's determination that Patrick White breached a contract with Credential. We affirm the trial court's judgment in all other respects. Costs on appeal are taxed one-half to the appellant, Patrick L. White, and one-half to the appellee, Credential Leasing Corporation of Tennessee, Inc. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed by the trial court.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[3] The trial court's award of prejudgment interest was not challenged on appeal.

14